UNITED STATES *v.* BORDEN COMPANY ET AL.

No. 464.  Argued April 27, 1954.—Decided May 17, 1954.

*Assistant Attorney General Barnes* argued the cause for the United States.  With him on the brief were *Solicitor General Sobeloff, John F. Davis* and *Daniel M. Friedman.*

*Stuart S. Ball* argued the cause for the Borden Company et al., appellees.  On the brief were *Mr. Ball* for

the Borden Company et al., and *L. Edward Hart, Jr.* and *John Paul Stevens* for the Bowman Dairy Company et al., appellees.

*Leo F. Tierney* argued the cause for the Beloit Dairy Co., appellee. With him on the brief was *Charles L. Stewart, Jr.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The United States instituted this civil proceeding against ten Chicago dairies,[1] charging conspiracy to restrain and monopolize the sale of fluid milk to wholesale customers and others in the Chicago area, in violation of the Sherman Act, and price discrimination in violation of the Clayton Act. Prior to trial a consent decree was entered against five of the smaller defendant companies, enjoining continuation of the conduct charged in the complaint. At the close of the Government's case against the remaining five defendants,[2] the District Court dismissed the complaint in its entirety. It held that, as to the alleged violations of §§ 1 and 2 of the Sherman Act, the evidence failed to establish the existence of a conspiracy or combination; and that, though there was proof of price discrimination violative of § 2 (a) of the Clayton Act by four of the defendants,[3] a prior decree in a private antitrust action brought by a competitor dairy company enjoined the conduct in question and made it "useless" to award the Government an injunction. 111 F. Supp. 562. The Government then appealed directly to this

---

[1] The Borden Company, Bowman Dairy Company, Belmont Dairy Company, Ridgeview Farms Dairy, Beloit Dairy Company, Capitol Dairy Company, American Processing and Sales Company, Hunding Dairy Company, Meadowmoor Dairies and Western United Dairy Company.

[2] Borden, Bowman, Belmont, Ridgeview and Beloit.

[3] Borden, Bowman, Belmont and Ridgeview.

Court under 15 U. S. C. § 29, and we noted probable jurisdiction, 346 U. S. 914.

Three of the four questions presented on this appeal deal with rulings by the district judge that certain evidence was inadmissible.[4] The Government does not challenge the court's conclusion that on the record conspiracy was not shown, but it insists that error in these rulings precluded establishment of the conspiracy. After hearing argument and considering as much of the record as is before us, including the Government's offers of proof, we are of the opinion that, even assuming error in each of the challenged rulings, it does not appear that admission of the evidence in question would have been sufficient to change the conclusion that the Government had not established a case under the Sherman Act; hence the rulings cannot be said to have affected substantial rights of the parties within the meaning of 28 U. S. C. § 2111.[5] Since on this basis we affirm the judgment of dismissal

---

[4] The trial court refused to allow the Government to use for impeachment of a hostile witness a deposition taken in another case; to introduce in evidence certain tape recordings made for use in the prior case; and to introduce testimony as to a conversation with a deceased agent of one of the defendants.

[5] "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

Fed. Rules Civ. Proc., 61: "Harmless Error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

as to the Sherman Act allegations, it is unnecessary to discuss the propriety or impropriety of the several rulings.

The fourth question challenges the basis of the District Court's refusal to grant the Government injunctive relief against price discrimination by four of the defendants.[6] The district judge found that government evidence tended to prove that these defendant companies have sold at prices which discriminate between purchasers of milk of like grade and quality. This, he said, would give defendants the burden of establishing that the discriminations fall within statutory exceptions, were it not that under a consent decree entered against defendants in a private suit in 1952 by another judge of the same court,[7] they already are enjoined from performing all acts specified by the Government in its prayer for relief. In the opinion of the district judge,

> "A decree of this court entered at the instance of a private litigant is as binding upon a defendant as a decree entered at the instance of the government; and a consent decree, entered by any judge of this court without hearing evidence, is as binding as a decree entered by another judge after a protracted trial. I conclude, therefore, that each of the remaining defendants is now effectively enjoined by this court from performing any of the acts set forth in the government's prayer for injunctive relief, insofar as the Clayton Act is concerned.
>
> "As a court of equity, I will not perform a useless task. The violations of the Clayton Act described in the complaint and shown at the trial are, for the

---

[6] See note 3, *supra.* Since the Government does not question the correctness of the judgment of dismissal of its claim under § 2 (a) of the Clayton Act against Beloit, the fifth defendant, it is not before us.

[7] *Dean Milk Co.* v. *American Processing & Sales Co.,* U. S. D. C. N. D. Ill. E. D., No. 49 C 1159, Dec. 3, 1952.

most part, old violations. And to this court, the Dean decree assures, as completely as any decree can assure, that there will be no new violations." 111 F. Supp., at 581.

Accordingly the court dismissed that part of the complaint which alleged violations of § 2 (a) of the Clayton Act. Thus it appears that the Government was refused an injunction solely because of the existence of the prior decree entered against defendants in the course of a private action. We think that refusal on this basis constituted an abuse of discretion.

Section 15 of the Clayton Act, 15 U. S. C. § 25, charges the United States district attorneys, under supervision of the Attorney General, with the duty of instituting equity proceedings to prevent and restrain violations of certain of the antitrust laws, including price discrimination. Under § 16 of the Act, 15 U. S. C. § 26, a private plaintiff may obtain injunctive relief against such violations only on a showing of "threatened loss or damage"; and this must be of a sort personal to the plaintiff, *Beegle* v. *Thomson,* 138 F. 2d 875, 881 (1943). The private-injunction action, like the treble-damage action under § 4 of the Act, supplements government enforcement of the antitrust laws; but it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under these laws. The Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when his personal interest will be served. These private and public actions were designed to be cumulative, not mutually exclusive. S. Rep. No. 698, 63d Cong., 2d Sess. 42; cf. *Federal Trade Comm'n* v. *Cement Institute,* 333 U. S. 683, 694–695 (1948). ". . . [T]he scheme of the statute is sharply

to distinguish between Government suits, either criminal or civil, and private suits for injunctive relief or for treble damages. Different policy considerations govern each of these. They may proceed simultaneously or in disregard of each other." *United States* v. *Bendix Home Appliances,* 10 F. R. D. 73, 77 (S. D. N. Y. 1949). In short, the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree.

To hold that a private decree renders unnecessary an injunction to which the Government is otherwise entitled is to ignore the prime object of civil decrees secured by the Government—the continuing protection of the public, by means of contempt proceedings, against a recurrence of antitrust violations. Should a private decree be violated, the Government would have no right to bring contempt proceedings to enforce compliance; it might succeed in intervening in the private action but only at the court's discretion. The private plaintiff might find it to his advantage to refrain from seeking enforcement of a violated decree; for example, where the defendant's violation operated primarily against plaintiff's competitors. Or the plaintiff might agree to modification of the decree, again looking only to his own interest. In any of these events it is likely that the public interest would not be adequately protected by the mere existence of the private decree. It is also clear that Congress did not intend that the efforts of a private litigant should supersede the duties of the Department of Justice in policing an industry. Yet the effect of the decision below is to place on a private litigant the burden of policing a major part of the milk industry in Chicago, a task beyond its ability, even assuming it to be consistently so inclined.

We agree with appellees that the statute confers on the Government no absolute right to an injunction upon a showing of past violation of the antitrust laws by

defendants. As we said in *United States* v. *W. T. Grant Co.,* 345 U. S. 629, 633 (1953):

> ". . . the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it."

The Government contends that it has "an independent right to relief against violations of the Clayton Act, without regard to whether such violations previously have been enjoined by a decree in a private antitrust suit." But we cannot say that the existence of the private decree warrants *no* consideration by the chancellor in assessing the likelihood of recurring illegal activity. We hold only that, in view of the difference in the respective interests sought to be vindicated by the Government and the private litigant, the district judge abused his discretion in refusing the Government an injunction solely because of the existence of the private decree.

The judgment of dismissal as to the Sherman Act allegations is affirmed; as to the Clayton Act allegations the case is remanded to the District Court for further consideration, and such further proceedings as may be necessary, in accordance with this opinion.

MR. JUSTICE BLACK and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.