**UNITED STATES of America,**

v.

**CHAS. PFIZER & CO., Inc., John E. McKeen, American Cyanamid Company, Wilbur G. Malcolm, Bristol-Myers Company and Frederic N. Schwartz, Defendants.**

United States District Court
S. D. New York.
April 30, 1963.

200

John J. Galgay, Atty., Dept. of Justice, by Herman Gelfand, Gerald R. Dicker, Stanley W. Nathanson, New York City, for the United States.

John F. Wood, New York City, for Chas. Pfizer & Co., Inc. and John E. McKeen.

Donovan, Leisure, Newton & Irvine, New York City, for American Cyanamid Co. and Wilbur G. Malcolm.

Winthrop, Stimson, Putnam & Roberts, New York City, for Bristol-Myers Co. and Frederic N. Schwartz.

RYAN, Chief Judge.

Defendants have moved to strike from the indictment allegations of "unreasonably high prices" and "unreasonably high profits" contained in Paragraphs 37, 42 of the section entitled "Background of the Conspiracy"; Paragraph 46(J) and (K) listing "means and methods" used to effectuate the conspiracy; and Paragraph 47(a)–(e) of "Effects of the Combination and Conspiracy"; and these paragraphs as realleged in Counts Two (Paragraphs 49, 52 and 53) and Three (55, 57 and 58).

The indictment charges defendants with conspiracy to restrain trade in broad spectrum antibiotics in that they agreed to confine the manufacture and sale of tetracycline products to themselves and to sell broad spectrum antibiotic products at "substantially identical and non-competitive prices"; with a conspiracy to monopolize trade and commerce in broad spectrum antibiotics, and with a monopoly.

Defendants' position is that the repeated averments, which they ask be stricken, are prejudicial, unnecessary and immaterial. Defendants argue that they are charged only with agreement to sell "at substantially identical and non-competitive prices" and not with agreement to sell at "unreasonably high prices." As we have noted, the other terms of the conspiracy charged are alleged to be an agreement to restrict manufacture and sales to themselves and their coconspirators.

■ On a motion to strike under Rule 7(d), Federal Rules of Criminal Procedure, the Court is limited in its power to strike as "surplusage" only immaterial and irrelevant allegations which may be prejudicial. (Notes of the Advisory Committee, 18 U.S.C. rule 7. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.)

■ Prejudice is assumed from the indictment itself and clearly from allegations of exaction of unreasonably high prices. But, if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language, it may not be stricken. The Government may broadly allege what it expects to prove and what it may under applicable principles of law prove. Certainly the language of the indictment cannot be more prejudicial than the evidence offered to sustain it. (United States v. A. B. Dick & Co., D.C., 7 F.R.D. 437.) If the allegation is of matters by which the Government hopes to establish the charge, it can scarcely be called "surplusage". There is then no occasion for relief under Rule 7(d) for "[t]he danger to be protected against (by this Rule)

is that material prejudicial and otherwise inadmissible will be conveyed to the jury when the indictment is read." (United States v. Bonanno, 177 F.Supp. 106, 116 (SDNY 1959); United States v. Klein, 124 F.Supp. 476 (SDNY 1954).)

The relevance of "high prices" and of "high profits" to the three crimes charged is, therefore, determinative of this motion.

■ The indictment does not charge as an element of the conspiracy to restrain or to monopolize that the defendants maintained unreasonably high prices. This is quite proper for, where an agreement fixing prices is alleged, the level of the prices fixed is not an element of the crime. The establishment of the price by joint action is the illegal act and this is so whether the price is or is not unreasonable. (United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129.) It does not follow, however, that evidence of the price is irrelevant. Certainly, uniformity of price may be and has been considered some evidence tending to establish an illegal agreement. Evidence of high or low prices and profits is also admissible as proof of a circumstance a jury may hear and weigh. From it, and other evidence, a jury may infer not only that an agreement exists among competitors to exclude others, to restrain trade and to control the market, but, supported by other evidence, the jury may infer that the alleged combination has power over the market and has exercised it with the intent to achieve a monopoly, thus establishing an offense under Sections 1 and 2 Report of the Attorney General, National Committee to Study the Antitrust Laws, pp. 48–50.

■ Beginning with Cement Manufactures Ass'n v. United States, 268 U.S. 588, 45 S.Ct. 586, 69 L.Ed. 1104, the Supreme Court recognized that "an artificial price level not related to the supply and demand of a given commodity" may be evidence from which an agreement to

restrain trade may be inferred (606, 45 S.Ct. 592); to the same effect is United States v. Trenton Potteries Co., supra, where the Court equated the power to fix prices and control the market with the power to fix "arbitrary and unreasonable prices."

United States v. Socony Vacuum Oil Co., supra, much relied on by defendants because of the Court's statement that "[t]here was * * * no error in the refusal to charge that in order to convict the jury must find that the resultant prices were raised and maintained at 'high, arbitrary and non-competitive levels'"; that "[t]he charge in the indictment to that effect was surplusage"; (310 U.S. 222, 60 S.Ct. 843); that offers of proof as to the reasonableness of prices were properly denied as immaterial (229, 60 S.Ct. 847) and that testimony bearing on reasonableness of prices was wholly irrelevant, since the reasonableness of prices was not properly an issue in the case (310 U.S. 243, 60 S.Ct. 853), is not to the contrary.

The indictment there charged that defendants had "artificially raised and fixed and maintained at artificially high and non-competitive levels" prices in the gasoline market, through a cooperative price buying program. Defendants, admitting the program, sought to justify it by evidence of the reasonableness of the prices established under it. It was when dealing with an offer of such evidence, and with the denial of defendants' request to charge that to convict, the Government was required to establish the high arbitrary prices alleged in the indictment that the Court made the quoted statements. The Court did not hold that the price level was not a circumstance relevant to establishing the agreement; on the contrary, the Court wrote that "* * * price-fixing includes more than the mere establishment of uniform prices" and embraces the setting of a price range, or of a certain level or of ascending or descending scales, or of various formulae to relate the price to the market price (222, 60 S.Ct. 843).

In American Tobacco Co. v. United States, 6 Cir., 147 F.2d 93, aff'd 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575, on an indictment charging price fixing, the Court considered evidence of "prices and selling practices", the relationship between the prices charged by defendants to costs of production and economic conditions generally, and the fact that, in the midst of a national depression, defendants were making "tremendous profits as a result of the price increase." Proof of this nature, it held, might be considered as supporting a finding of guilt of monopolization, on the theory that unreasonably high prices and profits evidenced the defendants' monopoly power and the barriers to entry of new competitors. As most recently written, "predatory pricing" is the "specific weapon of the monopolist." (United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).)

Finally, defendants argue that evidence of "unreasonably high" profits and prices should not be admitted because of difficulty of proof in establishing what is "high".

 It may be that because defendants' products are *sui generis* and patented and because of a limited market, the usual tests of comparative market conditions in the specific industry and as a whole may not be applied to establish high profits. We do not so decide; it is not our function to do so on this motion. However, it may appear that cost production, merchandising practices, coupled with other proof, will show that the prices and profits were so totally unrelated to the market in question as to support a finding that the defendants fixed the price by agreement. (United States v. Eli Lilly & Co., D.C., 24 F.R.D. 285; United States v. General Electric Co., D.C., 82 F.Supp. 753; United States v. A. B. Dick & Co., supra; United States v. National Dairy Products Corp., supra.) Here, again, we may not now so determine.

 Unquestionably, evidence of the unreasonableness of prices will tend to

prolong the trial; this alone is not sufficient reason for depriving the Government of what may be important items of circumstantial proof. Problems arising from proof of this nature can be cared for by the trial Judge.

Motion to strike the allegations is denied. So ordered.

The question presented by the motion to dismiss Count Three is whether this count, which charges the substantive crime of monopolization contains sufficient allegations that the alleged monopolists were acting in concert when they did the acts set forth in Paragraph 46.

 Where defendants are charged, as here, collectively with monopolization, the charge must be supported by an allegation of unanimity of action. "It is in no respect a violation of the law that a number of individuals or corporations, each acting for himself or itself, may own or control a large part, or even all of a particular commodity." (American Tobacco Co. v. United States, supra.) Power alone is not sufficient to sustain a charge of monopolization; the power must be accompanied with the intent and purpose to exercise such power. When several defendants are charged collectively, there must be an underlying agreement and purpose to act in concert. United States v. Borden Co., D.C., 111 F.Supp. 562, aff'd 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903.

 Count Three does not literally allege a conspiracy or itself charge the defendants with joint action but it does specifically incorporate and reallege as "things done" "in the monopolization" by defendants and co-conspirators the acts described and alleged in subdivisions (a) through (l) of Paragraph 46. We must, therefore, look at these acts (a) through (l) of Paragraph 46 to see if, given their ordinary meaning, they charge either expressly or impliedly concert or unity of action—not necessarily any illegality of action—for it is too

clear to warrant discussion that an illegal combination may exist through lawful activities.

I hold that they do.

 The acts enumerated are cross licensing among the three defendants; mutual assistance by one defendant to enable the other to obtain a patent; suppression of litigation among the three defendants on the validity of a patent held by one of them; suppression of information by these three defendants from the Patent Office; refusal by these three defendants to sell to all others except to one of their number; the issuance of a license by one defendant limited at the request of another and finally the maintenance of identical prices, dosage and customer classification by all three defendants.

 Literally and logically the acts described and set forth in these paragraphs, if proved, would support the charge of acting together and in concert. The circumstances described, if accepted as they must be on this motion, compel a conclusion that the acts were done pursuant to common agreement of all. They are the essential facts constituting the offense charged under Count III (Rule 7(c)). It is unnecessary that the count in specific language allege the conclusion that the monopoly was executed by combination or joint action.

Not only does the language compel such a conclusion but the acts relied on as evidence of a monopoly are the very acts relied on as evidencing the conspiracy. If they are sufficient overt acts to sustain a charge of conspiracy and that it was afoot, they must of necessity be sufficient to charge acting in concert or joint action for the monopoly charge.

Whether the Government will be able to establish that defendants were participants in a plan to achieve or maintain a monopoly is a matter for the trial and not for consideration at this time.

Motion to dismiss Count III is denied. So ordered.