**In re The PITTSBURGH AND LAKE ERIE RR CO. SECURITIES AND ANTITRUST LITIGATION.**

No. 73-2382.

M.D.L. No. 134.

United States District Court,
E. D. Pennsylvania.

June 27, 1974.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., Benesch, Friedlander, Mendelson & Coplan, Cleveland, Ohio, for plaintiffs.

Morgan, Lewis & Bockius, Philadelphia, Pa., Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendants.

## MEMORANDUM OF DECISION

GORBEY, District Judge.

The defendants National City Bank, John N. Eustice, Thomas F. Harvey, Edward G. Seaman and John L. Mennell (hereinafter referred to as "National City Bank defendants") have moved to dismiss the amended complaint for the reason that neither the amended complaint nor any of the four counts thereof state a claim on which relief can be granted.

The question whether the amended complaint states a stockholder's derivative cause of action has been considered in the light of the reasons given by Judge Thomas in his memorandum and order of July 30, 1973, and order entered thereon, dated September 6, 1973, in which he dismissed without prejudice the derivative action.

On page 4 of the memorandum which includes the text of paragraphs 1, 2, 3 and 4 of Section 10 of the Clayton Act, it is stated by the court:

"The first [paragraph of § 10 of the Clayton Act] imposes its duty on any interlocked corporation that deals with a common carrier without competitive bidding. The fourth paragraph makes criminal violation of the first paragraph by a common carrier, its directors, officers and agents. Reading

the second paragraph as necessarily dependent upon the first it makes criminal participation in a transaction *without competitive bidding* by a common carrier and an interlocked corporation by any person and who shall directly or indirectly do or attempt to do anything to prevent anyone from bidding or shall do any act to prevent free and fair competition among the bidders or those desiring to bid . . ." [Emphasis added.]

Judge Thomas then states that:

"An element is added by the fourth paragraph, whose criminal sanction is incorporated into the second paragraph. For any person to criminally or civilly violate the second paragraph of § 10, the prevention or interference with the bidding required by the first paragraph of § 10 must be knowing or intentional." *Supra,* pages 5 and 6.

The court determined that the complaint did not state a cause of action because it omits the essential allegation that competitive bidding was not undertaken for the purchase of the railroad cars and that this omission was known or intentional. *Supra,* pages 6 and 14.

The judge then pointed out that the National City Bank defendants are not charged under the second paragraph of § 10 of the Clayton Act (*i. e.,* they are not charged with knowingly or intentionally preventing "bidding . . . or free and fair competition among the bidders or those desiring to bid"). *Supra,* pages 6 and 7.

Since there was not in the original complaint an allegation that competitive bidding was omitted, and no allegation under the second paragraph of § 10 of the Clayton Act, the court logically held that a cause of action had not been stated.

In the amended complaint there is no allegation with respect to the first paragraph of § 10 of the Clayton Act that competitive bidding was omitted (*i. e.,* no allegation that bids had not been solicited).

As to count 1, there is the allegation that defendants "knowingly and intentionally interfered with and prevented competitive bidding", and in count 2, it is alleged that defendants conspired to prevent competitive bidding in connection with the purchase of the cars in question. In count 3 there is the allegation that defendants "knowingly and intentionally prevented free and fair competition among the bidder and those desiring to bid", and in count 4 there is the allegation that defendants with divers unknown persons conspired "to prevent free and fair competition among the bidder and those desiring to bid".

■ The conclusion of this court is that the facts alleged by the plaintiffs with respect to "a direct interference with and prevention of competitive bidding" under count 1, and the facts alleged with respect to a conspiracy to interfere with and prevent competitive bidding under count 2, if proved, would not support the contention that free and fair competition among the bidders was prevented. The facts alleged merely relate to the formulation of a bid submitted by Harvey and Seaman pursuant to a solicitation of bids by the interlocked, P&LE Railroad. The alleged circumstances with respect to the bid in question would not, whether known to potential bidders or not, prevent them from bidding or constitute an interference with their bidding. If all the facts alleged by plaintiffs were known to prospective bidders, any who desired to bid could have done so and without any interference from the defendants. Accordingly, counts 1 and 2 of the amended complaint do not state a cause of action and are dismissed with prejudice.

Counts 3 and 4 allege violation of the second paragraph of § 10 of the Clayton Act, relying upon the alleged facts relating to counts 1 and 2, plus other alleged facts relating to advanced arrangements for the necessary financing of the transaction between National City Bank defendants and Penn Central, which resulted in adequate time to submit the

bid in question, but which "prevented free and fair competition among the bidder and those desiring to bid", and which it alleged was the object of a conspiracy.

It thus appears that the theory of the plaintiffs' case with respect to the derivative action in counts 3 and 4 is that a *pro forma* compliance with the first paragraph of § 10 of the Clayton Act does not of itself constitute compliance with the statute, and that paragraph 2 of § 10 of the Clayton Act is applicable even if there has been literal compliance with the first paragraph.

This contention appears to be contrary to the position taken by Judge Thomas in his July 28th, 1973 memorandum and order at pages 4 and 5:

"The fourth paragraph makes criminal, violations of the first paragraph by a common carrier, its directors, officers, and agents. Reading the second paragraph as necessarily dependent upon the first, it makes criminal *participation in transactions without competitive bidding* by a common carrier and an interlocked corporation by any person who shall, directly or indirectly, do or attempt to do anything to prevent anyone from bidding, or shall do any act to prevent free and fair competition among the bidders or those desiring to bid . . ." [Emphasis added.]

It must be observed, however, that the aforesaid statement was made with respect to the original complaint in which, as Judge Thomas stated at pages 6 and 7 of his memorandum and order, "The National City defendants are not charged under the second paragraph, *i. e.*, they are not charged with knowingly or intentionally preventing 'bidding . . . or free and fair competition among the bidders or those desiring to bid' ".

■ Nothing in the history of § 10 of the Clayton Act, nor in the cited cases has been discovered to warrant the conclusion that a mere literal compliance with the first paragraph bars a judicial determination of the question whether any person, including a corporation, has directly or indirectly done or attempted to do anything to prevent anyone from bidding or has done any act to prevent free and fair competition among the bidders or those desiring to bid, under paragraph 2 of § 10 of the Clayton Act.

Paragraph 3 of the Clayton Act provides for the scrutinizing by the Interstate Commerce Commission of the situation where there has been *competitive bidding*, and if it believes that the law has been violated, it may present the facts and its findings to the Attorney General. [Emphasis added.]

Nevertheless, Congress has provided another means by which the action of the parties may be reviewed, for § 4 of the Clayton Act (15 U.S.C. § 15) creates a civil action for treble damages for any person "who shall be injured in his business or property by reason of anything forbidden in the antitrust laws".

■ A careful reading of paragraph 2 of § 10 of the Clayton Act shows clearly that it contemplates a situation where there was literal compliance with paragraph 1, where there was advertising and solicitation of bids because it relates "to any act to prevent anyone from bidding" or any act "to prevent free and fair competition among the *bidders* or those desiring to bid". [Emphasis added.] Thus, to interpret § 10 of the Clayton Act as making paragraph 2 applicable only where bids were not solicited, would be to ignore the precise language of the paragraph, for how could there be "bidders" in a situation where a contract was made between the interlocked parties without advertising and solicitation of bids?

■ Section 4 of the Clayton Act was designed to supply ancillary force of private investigators to supplement the Department of Justice in law enforcement. Quemos Theatre Company, Inc. v. Warner Bros. Pictures, Inc., 35 F.Supp. 949 (D.C.N.J.1942); Weinberg v. Sinclair Refining Co., 48 F.Supp. 203 (D.C.N.Y. 1942).

Another court has said that the allowance of the action for treble damages has as its purpose not merely the redress of injuries to individuals occasioned by prohibited practices but aid in achieving the broad social object of the statute. Machtronics, Inc. v. Zirpoli, 316 F.2d 820 (9th Cir. 1963).

It is common knowledge derived either from the study of the cases or a reading of the newspapers, or both, that there is a continuous battle to avoid the operation of both civil and criminal legislative acts in accordance with the intention of the legislative body promulgating such statutes.

Accordingly, it is not surprising that in the antitrust field, attempts have been and will continue to be made, to nullify the purpose of Congress. Defendants attempt to avoid such a charge by stating on page 6 of their brief on the pending motion:

"It is important at this time to note briefly what the National City Bank defendants are not contending. They do not contend that if there be a direct interlock between Penn Central and P&LE, the duty of soliciting, and submitting, competitive bids could be avoided by virtue of the transfer of nominal title from Penn Central to Harvey and Seaman. They have no doubt this court would hold that the obligations of the statute could not be avoided by such strategy and that P&LE would nevertheless be required to solicit, and the prospective sellers submit, competitive bids."

But the National City Bank defendants do urge that the failure to allege a lack of competitive bidding precludes the utilization of paragraph 2 of § 10 of the Clayton Act. As previously shown, this is inconsistent with the language of paragraph 2 itself and the purpose of Congress, which was not to shield from judicial scrutiny, either in a civil or criminal action, any new strategy designed to produce the very result sought to be achieved by the method defendants admit would be illegal—assurance that a contract will be based solely on the offer of the dominant corporation, or that free and fair competition among bidders or those desiring to bid would be eliminated.

■ The biblical injunction "thou shalt not steal" encompasses new methods as well as old. Hence, it may well be said that the Congressional purpose of free and fair competition may not be frustrated by either old or new methods. In approaching the legal problem here presented, it is not necessary nor permissible for the court to conclude that plaintiffs can prove their allegations. Since this is not a trial on the merits, but because the case is here on a motion to dismiss for failure to state a cause of action, every well-pleaded allegation must be taken as true for the purpose of the motion. Walker Process Equipment v. Food Machinery and Chemical Corporation, 382 U.S. 172, 86 S.Ct. 347, 15 L. Ed.2d 247 (1965).

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In a leading case, the Supreme Court of the United States stated:

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. *The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.* Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well-established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." [Emphasis added.] Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *see also* Conley v. Gibson, 355

U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A consideration of the alleged facts requires a continual recognition that:

"The evident purpose of § 10 of the Clayton Act was to prohibit a corporation from abusing a carrier by palming off upon it securities, supplies and other articles without *competitive bidding* and at excessive prices through overreaching by, or other misfeasance of, common directors, to the financial injury of the carrier and the consequent inpairment of its ability to serve the public interest." [Emphasis added.] Minn. & St. Louis RR Co. v. United States, 361 U.S. 173 at 190, 80 S.Ct. 229, 240, 4 L.Ed.2d 223 (1959), reh. den., 361 U.S. 945, 80 S.Ct. 405, 4 L.Ed.2d 365.

■ In the language of the second paragraph of § 10 of the Clayton Act, another purpose of Congress was to prohibit any person, including a corporation, from directly or indirectly doing or attempting to do any act to prevent free and fair competition among the bidders (where bids have been solicited) or those desiring to bid.

In addition, the sufficiency of the alleged facts to avoid a dismissal of the action must be considered in the light of the fact that the action here involved is a civil one under § 4 of the Clayton Act (15 U.S.C. § 15). As stated by the court in Roseland v. Phister Manufacturing Co., 125 F.2d 417 at 419 (1942): "The [Clayton] Act is penal so far as criminal liability is concerned but is remedial insofar as it creates a remedy for damages" and the purpose of ·giving private parties treble damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws (*e. g.* United States v. Borden Co., 347 U.S. 514 at 518, 74 S.Ct. 703, 706, 98 L.Ed. 903 (1954)).

■ Accordingly, "the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes" is applicable.

Tcherepnin v. Knight, 389 U.S. 332 at 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).

■ Thus, when the allegations of plaintiffs with respect to counts 3 and 4 are considered, it cannot reasonably be said that there can be no facts from which it could be concluded that concerted action of defendants knowingly and intentionally prevented free and fair competition, or that such purpose was the object of a conspiracy.

The evidence in support of the allegations may show that although bids have been solicited by P&LE, no bids were received other than one by Harvey and Seaman, or that there were potential bidders who refrained from bidding because of the situation allegedly brought about by defendants, who, by reason of common sense, as well as hornbook law, must be considered as having intended the natural and foreseeable consequences of their alleged conduct.

With respect to the conspiracy count, as Judge Thomas pointed out at page 11 of his memorandum and order of July 30, 1973:

". . . in a private antitrust suit a plaintiff must establish three elements, last of which is 'damage to him resulting from the violation of the antitrust laws'.", citing Simpson v. Union Oil Co. of Cal., 311 F.2d 764 (9th Cir. 1963) which was cited with approval in Elderbeerman Stores Corp. v. Federated Department Stores, Inc., 459 F.2d 138 (6th Cir. 1972).

As previously indicated, plaintiffs have alleged injury as a result of the alleged concerted action of defendants. Plaintiffs are entitled to present evidence to support their allegations that defendants violated § 10 of the Clayton Act and that damage resulted.

If, as indicated in Klinger v. B&O RR Co., 432 F.2d 506 at 516 and 520 (2d Cir. 1970), and stated by Judge Thomas in his memorandum of decision of July 30, 1973, the absence of competitive bidding as required by the first paragraph of § 10 of the Clayton Act is *per se* in-

jurious, it would be reasonable to conclude in the absence of case authority to the contrary that a knowing and willful interference with free and fair competition "among the bidders or those desiring to bid" would also be a *per se* violation.

The question of damages on a motion to dismiss is different from the question of damages when there is a trial on the merits. As plaintiffs concede on page 7 of their memorandum of law in opposition to motion of National City Bank defendants to dismiss the amended complaint, if damages could not be proved at a trial on the merits there could be no recovery.

In Simpson v. Union Oil Co. of Cal., 311 F.2d 764, 767 (9th Cir. 1963), it is stated:

"It is clear that the private litigant in a suit charging violation of the antitrust laws stands in a different position than the government in an antitrust action. In a government action, there need be present only a violation of the laws and damage to individuals need not be shown. The private litigant must not only show the violation of the antitrust laws, but show also the impact of the violation upon him and damage to him resulting from the violations of the antitrust laws."

"An alleged conspiracy or combination, if proved, constitutes a *per se* violation of the Sherman Act. Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). For an aggrieved party to state a claim for relief under the Sherman Act it is necessary to allege only a *per se* violation of the act and, in a treble damage action, resultant damage. Radiant Burners, Inc. v. Peoples Gas Lgt. & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961)." Stavrides v. Mellon National Bank & Trust Co., 353 F.Supp. 1072 at 1076 (D.C.Pa. 1973).

This court concludes that counts 1 and 2 of the complaint should be dismissed with prejudice. Defendants' motion to dismiss counts 3 and 4 is denied.