431 F.Supp. 405 (1977)
NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, National Organization for Women, National Organization for WomenNew York State, Women Office Workers, Fight Back, Irene S. Lo Re, Jacqueline Edwards, and Jenny Green Lee, on behalf of themselves and all persons similarly situated, Plaintiffs,
v.
NEW YORK CLEARING HOUSE ASSOCIATION, Bank of New York, Bankers Trust Company, Chase Manhattan Bank, N.A., Chemical Bank, Citibank, N.A., Irving Trust Company, Manufacturers Hanover Trust Company, Marine Midland Bank, Morgan Guaranty Trust Company, National Bank of North America, and U.S. Trust Company, Defendants.
No. 77 Civil 881.
United States District Court, S. D. New York.
May 13, 1977.
*406 Eugene J. Leff, Isabelle Katz Pinzler, Diana H. Greene, National Employment Law Project, Inc., Barbara A. Morris, Director, New York City, Michael D. Kaufman, Nancy LeBlanc, MFY Legal Services, Inc., New York City, Nathaniel R. Jones, William D. Wells, N.A.A.C.P., New York City, for plaintiffs.
Sullivan & Cromwell, New York City, for defendants, New York Clearing House Ass'n, Bank of New York and Marine Midland Bank; John Dickey, New York City, of counsel.
Milbank, Tweed, Hadley & McCloy, New York City, for defendant, Chase Manhattan Bank, N.A.
Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for defendant, Chemical Bank.
Shearman & Sterling, New York City, for defendant Citibank, N.A.
Winthrop, Stimson, Putnam & Roberts, New York City, for defendant, Irving Trust Co.
Simpson, Thacher & Bartlett, New York City, for defendant, Manufacturers Hanover Trust Co.
Davis, Polk & Wardwell, New York City, for defendant, Morgan Guaranty Trust Co.
Carter, Ledyard & Milburn, New York City, for defendant, U. S. Trust Co. of New York.
Donovan, Leisure, Newton & Irvine, New York City, for defendant, Bankers Trust Co.
Cole & Deitz, New York City, for defendant, National Bank of North America.

OPINION
EDWARD WEINFELD, District Judge.
In this action for declaratory and injunctive relief under the antitrust laws, the defendants move to dismiss the complaint *407 for failure to state a claim upon which relief can be granted on the ground that the plaintiffs lack standing to bring this action. The plaintiffs are five organizations which allege that they are devoted to the elimination of discrimination against blacks, Hispanics and women, and three individual females.[1] They sue on behalf of a class of all women and minority group members against whom they allege the defendants have discriminated or will discriminate in employment.[2] The defendants are eleven leading commercial banks located in New York City and the New York Clearing House Association, an unincorporated association of which the defendants are members. The complaint alleges that New York City requires that all persons entering into non-construction contracts with the City adopt affirmative action programs to increase their hiring of women and minority group members, and that the defendants, in violation of Section 1 of the Sherman Act,[3] have conspired with other unnamed persons to refuse to enter into, or to engage in negotiations for, any agreement with the City for specialized financial or data processing services, unless this affirmative action requirement is withdrawn or modified, or the banks exempted therefrom. The complaint further alleges that because few, if any, banks other than defendants can provide such services, the conspiracy has the effect of denying the City such services altogether, and of impairing the City's ability to administer efficiently certain of its governmental functions. Thus, the plaintiffs allege, the defendants, because of the essential nature of the services they provide, will, unless restrained, succeed in forcing the City to abandon its affirmative action program as applied to them. This conspiracy is alleged to restrain trade in that it will obstruct payment of interest to out of state holders of city obligations and hinder collection of parking fines from residents of states other than New York.
In support of their standing to bring this suit, the three individual plaintiffs claim that they were denied employment or advancement by certain of the banks on the basis of their sex and race, pursuant to "discriminatory employment practices which, upon information and belief, are prevalent among the defendant banks generally." They claim that if the City's affirmative action requirements are not enforced against defendants, their applications for employment or advancement "will not [be] reconsider[ed] on the basis of merit alone," and that they and members of their class "will obtain fewer jobs, promotions, raises, transfers, and training and other employment opportunities." The plaintiff organizations claim that, if the affirmative action requirements are not enforced, their members will obtain fewer employment opportunities, and their own efforts to obtain equal employment opportunities for their members will be "frustrated and undermined."
The first question presented on this motion is whether the test of standing to sue for injunctive relief under the antitrust laws differs from that in suits for treble damages. Section 4 of the Clayton Act[4] allows "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to recover treble damages. Despite the broad language of this section,[5] the courts have limited standing to sue for treble damages because of the speculative nature of claims *408 of damage by remote victims of an antitrust violation, and because of concern that
if the flood-gates were opened to permit treble damage suits by every creditor, stockholder, employee, subcontractor, or supplier of goods and services that might be affected, the lure of a treble recovery, implemented by the availability of the class suit as facilitated by the amendment of Rule 23 F.R.C.P., would result in an over-kill, due to an enlargement of the private weapon to a caliber far exceeding that contemplated by Congress.[6]
Thus, in addition to the ordinary requirement of causation, a "rule of reason"[7] is used to determine standing in antitrust treble damage actions. This rule has been succinctly stated as follows:
[A] plaintiff must allege a causative link to his injury which is "direct" rather than "incidental" or which indicates that his business or property was in the "target area" of the defendant's illegal act.[8]
Injunctive relief against antitrust violations is authorized, not by section 4, but by section 16 of the Clayton Act,[9] which reads in relevant part:
Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . ..
The Supreme Court has recognized that section 16 is "notably different" from section 4, since the potential for unlimited multiple recoveries in treble damage actions does not exist in injunctive actions.[10] Thus, several courts have held that the "target area" test of section 4 should not be applied so as to limit standing in injunctive actions brought under section 16.[11] These cases have held that to have standing to sue for injunctive relief a plaintiff need allege only that he is "threatened with loss or injury proximately resulting from the antitrust violation."[12] Plaintiffs vigorously urge the Court to adopt this test of standing in this case.
*409 However, the Court of Appeals in this Circuit has consistently applied the "target area" test to determine standing to sue for injunctive relief under the antitrust laws.[13] In Nassau County Association of Insurance Agents, Inc. v. Aetna Life and Casualty Co.,[14] four associations of insurance agents sought treble damages and injunctive relief as a result of an alleged conspiracy directed against insurance agents by the defendants, who were insurance companies. Plaintiffs alleged that the defendants, in furtherance of the conspiracy, had terminated certain contracts with some agents who were members of plaintiffs, as a result of which plaintiffs had lost membership and dues income.[15] On appeal from the District Court's dismissal for lack of standing,[16] the plaintiffs argued at length that the "target area" test of section 4 did not apply to actions for injunctive relief.[17] The Court of Appeals, after holding that the plaintiffs lacked standing to sue for treble damages because they neither had suffered any direct injury nor were in the target area of the alleged conspiracy, stated that "[f]or the same reasons, plaintiffs also lack standing to sue for injunctive relief under § 16 of the Clayton Act . . .."[18] In light of the issue explicitly presented and briefed by appellants,[19] it is clear that the Court of Appeals intended the "target area" test applied under section 4 to apply to actions for injunctive relief as well. Moreover, in other cases involving both injunctive relief and treble damages, the Court of Appeals has described the "target area" rule as the test of standing to pursue "a private remedy" or of "Clayton Act standing," without differentiating between section 4 and section 16.[20] Thus, the standing rules developed in treble damage cases apply to the plaintiffs in this injunctive action.
In order to have standing to sue under the Clayton Act a plaintiff must show more than that he was injured as a result of an alleged antitrust violation, or even that his injury was foreseeable or intended.[21] He must show that he is "within that area of the economy which is endangered by a breakdown in competitive conditions in a particular industry."[22] In other *410 words, the plaintiff must suffer direct injury as a result of the anti-competitive consequences of the defendants' acts. If not, then he cannot sue even if he has suffered injury as a result of his economic relationship to a target of the conspiracy or to one of the conspirators.[23] Applying this rule, "suppliers, stockholders, employees, landlords, franchisors, licensors, and consumers"[24] of targets or conspirators have been denied standing to sue.
It is clear that the plaintiff organizations lack standing to bring this suit. A plaintiff may obtain injunctive relief against an antitrust violation only upon a showing of threatened loss or damage "personal to [him]."[25] Thus the organizations cannot sue derivatively under the antitrust laws to assert the rights of their members.[26] Moreover, the injury which the associations claim that they have suffered themselves, frustration of their efforts to achieve equal opportunity, is very nebulous and extremely remote from the target area of the violations. If the decrease in revenues suffered by the plaintiffs in the Nassau County case[27] was too remote to support standing, then the speculative non-economic injury to the associations here is surely too remote.
The individual plaintiffs stand on no firmer ground. The alleged conspiracy is not aimed at present or prospective employees of the defendants, but at the City of New York, to compel the City to eliminate the affirmative action requirement as a condition of receiving the City's business. The target is the City. Moreover, by the allegations of the complaint itself the trade allegedly restrained is "interstate trade and commerce in specialized financial and data processing services for local governments." The plaintiffs are neither suppliers nor consumers of such financial services, but employees or prospective employees of the defendants. They will suffer injury not because they are within the target area of the conspiracy, but indirectly; according to the complaint, if defendants succeed in forcing New York City not to apply its affirmative action program to banks, then members of plaintiffs' class, present and potential employees of defendants, will be adversely affected either in promotions or job opportunities. Thus, the case is similar to those in which employees have claimed that their employer's antitrust violations, by restricting his production, have lessened job opportunities; like those employees, these plaintiffs do not have standing to sue.[28]
*411 Moreover, the injury plaintiffs will suffer is not "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."[29] The Sherman and Clayton Acts were directed against conduct restraining trade or monopolistic practices. Under the allegations of the complaint, the claimed antitrust violations are illegal because they interfere with the natural flow of interstate commerce, tend to destroy free competition and lead towards monopolies.[30] Plaintiffs themselves are not the victims of these claimed anti-competitive effects they are not destroyed competitors or coerced consumers. Rather, their claim is of racial and sexual discrimination, presented in the guise of a Sherman Act violation. It is questionable whether Congress intended the antitrust statutes, with their treble damages provision, to impose liability for discrimination based on race or sex. That doubt is deepened when it is recognized that such discrimination can be redressed by various statutes specifically enacted to prevent it.[31]
The complaint is dismissed for failure to state a claim.[32] Judgment may be entered accordingly.
NOTES
[1] Two of the women are white and one is black.
[2] The class is defined as

all past, present and future female, black, Hispanic (non-European), Asian-American, and American Indian employees of, and applicants for employment with, any of the defendant banks or any other non-construction contractor of the City of New York who were or will be denied initial hiring, promotion, raises, training, transfer, or any other employment opportunity by any of the aforesaid banks or other contractors.
[3] 15 U.S.C. § 1. The plaintiffs also assert a pendent state law claim under the Donnelly Act, N.Y.Gen.Bus.L. § 340(1) (McKinney 1968).
[4] 15 U.S.C. § 15.
[5] See Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Radovich v. National Football League, 352 U.S. 445, 454, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948).
[6] Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1295 (2d Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972).
[7] Id. at 1296.
[8] Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183, 187 (2d Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971); see also cases cited in Sherman, Antitrust Standing: From Loeb to Malamud, 51 N.Y.U.L.Rev. 374, 376 n. 16 (1976). But see Malamud v. Sinclair Oil Corp., 521 F.2d 1142 (6th Cir. 1975) (applying administrative law standing test of Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). Limitations upon standing to sue in treble damage actions have apparently been approved by the Supreme Court. Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 262 n. 14, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

Whether there is a difference between the "target area" and the "direct injury" test, and, if so, which one is proper, is unclear. See In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, 481 F.2d 122, 126-29 (9th Cir.), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). As the quotation in text indicates, the Second Circuit appears to use both tests interchangeably. See also Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976).
[9] 15 U.S.C. § 26.
[10] Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 260-64, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Hawaii held that, because of these differences, although a state could sue parens patriae for injunctive relief, see Georgia v. Pennsylvania R.R., 324 U.S. 439, 450-52, 65 S.Ct. 716, 89 L.Ed. 1051 (1945), it could not sue parens patriae for treble damages.
[11] See, e. g., Jeffrey v. Southwestern Bell, 518 F.2d 1129, 1132 (5th Cir. 1975); In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, 481 F.2d 122, 130-31 (9th Cir.), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973); Nader v. Air Transp. Ass'n of America, 426 F.Supp. 1035, 1038-40 (D.D.C.1977); Copperweld Corp. v. Imetal, 403 F.Supp. 579, 588 (W.D.Pa.1975).
[12] Jeffrey v. Southwestern Bell, 518 F.2d 1129, 1132 (5th Cir. 1975).
[13] Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co., 497 F.2d 1151 (2d Cir.), cert. denied, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974); SCM Corp. v. Radio Corp. of America, 407 F.2d 166 (2d Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969).
[14] 497 F.2d 1151 (2d Cir.), cert. denied, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974).
[15] The plaintiffs also attempted to assert derivatively the rights of their members, as do the plaintiff organizations herein. See p. 410 infra.
[16] 361 F.Supp. 967 (S.D.N.Y.1973). An earlier complaint, which alleged only derivative injury and not the loss of dues, see note 15 supra, was also dismissed. Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Cas. & Sur. Co., 345 F.Supp. 645 (S.D.N.Y.1972).
[17] Brief for Plaintiffs-Appellants, at 46-49.
[18] 497 F.2d at 1154 n. 4.
[19] Cf. Cantor v. Detroit Edison Co., 428 U.S. 579, 585-92, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). Compare Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925).
[20] Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); see also SCM Corp. v. Radio Corp. of America, 407 F.2d 166 (2d Cir. 1969).
[21] Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183, 188 (2d Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971); Productive Inventions, Inc. v. Trico Prods. Corp., 224 F.2d 678, 679 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).
[22] Conference of Studio Unions v. Loew's Inc., 193 F.2d 51, 54-55 (9th Cir. 1951), cert. denied, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). Accord, STET In re Multidistrict Vehicle Air Pollution M. D. L. No. 31, 481 F.2d 122, 128 (9th Cir.), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973); STET Southern Concrete Co. v. United States Steel Corp., 535 F.2d 313, 316 (5th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); see Cromar Co. v. Nuclear Materials & Equip. Corp., 543 F.2d 501, 506 (3d Cir. 1976); cf. GAF Corp. v. Circle Floor Co., 463 F.2d 752, 757-59 (2d Cir. 1972), cert. dismissed, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973) ("injured by restraints on competitive forces in the economy"); Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183, 187 (2d Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971) ("a plaintiff engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect.").
[23] Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1295-96 (2d Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972).
[24] Long Island Lighting Co. v. Standard Oil Co. of Cal., 521 F.2d 1269, 1274 (2d Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976) (emphasis added) (footnotes omitted).
[25] United States v. Borden Co., 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954).
[26] Pacific Coast Agricultural Export Ass'n v. Sunkist Growers, Inc., 526 F.2d 1196, 1207 (9th Cir. 1975), cert. denied, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976); Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co., 361 F.Supp. 967 (S.D.N.Y.1973), aff'd, 497 F.2d 1151 (2d Cir.), cert. denied, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974); Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Cas. & Sur. Co., 345 F.Supp. 645, 647-49 (S.D.N.Y. 1972); Cordova v. Bache & Co., 321 F.Supp. 600, 604 (S.D.N.Y.1970).
[27] See p. 409 supra.
[28] Contreras v. Grower Shipping Vegetable Ass'n, 484 F.2d 1346 (9th Cir. 1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974); Reibert v. Atlantic Richfield Co., 471 F.2d 727 (10th Cir.), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973). Compare Tugboat, Inc. v. Mobile Towing Co., 534 F.2d 1172, 1176-78 (5th Cir. 1976) (conspiracy directed at unionized employees); Veizaga v. National Bd. for Respiratory Therapy, 1977-1 Trade Cas. ¶ 61,274 (N.D.Ill. Jan. 27, 1977) (group boycott by refusing to hire members of plaintiff class).
[29] Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), see GAF Corp. v. Circle Floor Co., 463 F.2d 752, 757-59 (2d Cir. 1972), cert. dismissed, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973).
[30] See Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); Fashion Originators Guild of America, Inc. v. FTC, 312 U.S. 457, 465, 61 S.Ct. 703, 85 L.Ed. 949 (1941).
[31] 42 U.S.C. § 2000e et seq.; see generally U.S.Const. Amend. XIV; 42 U.S.C. § 1981 et seq.
[32] Since the federal claim is dismissed, the pendent state claim is also. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1297 (2d Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); O'Neill v. Maytag, 339 F.2d 764, 766 n. 3 (2d Cir. 1964).