The NASSAU COUNTY ASSOCIATION
OF INSURANCE AGENTS, INC.,
et al., Plaintiffs,

v.

AETNA CASUALTY & SURETY COM-
PANY et al., Defendants.

No. 71 Civ. 4101.

United States District Court,
S. D. New York.

July 13, 1972.

Donner, Fagelson & Hariton, Bay Shore, N. Y., for plaintiffs; Frederick Fagelson, of counsel.

Davis, Polk & Wardwell, New York City, for certain defendants; Henry L. King, Richard Miles Berman, New York City, of counsel.

Aranow, Brodsky, Bohlinger, Benetar, Einhorn & Dann, New York City, for defendants (Consolidated Mutual Ins. Co., Long Island Ins. Co., Cosmopolitan Mutual Ins. Co., and New York Central Mutual Fire Ins. Co.); Alfred J. Bohlinger and Robert J. Ward, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Aetna Co. defendant; Morris B. Abram, Sidney S. Rosdeitcher, New York City, of counsel.

Donovan, Donovan, Maloof & Walsh, New York City, for Great American Ins. Companies and Zurich Ins. Companies; John P. Walsh, New York City, of counsel.

Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for Merchants Mutual Ins. Co.; C. Kenneth Shank, Jr., New York City, of counsel.

Boyle, Feller & Hirsch, New York City, for American Fidelity Fire Insurance Co.; Leo H. Hirsch, Jr., New York City, of counsel.

Gottesman, Wolgel & Smith, New York City, for Peerless Ins. Co. and Netherlands Ins. Co.; Harold H. Wolgel, New York City, of counsel.

Cordes, Purcell, Jewell & Ingrao, Mineola, N. Y., for Farm Family Mutual Ins. Co.; Stephen A. Fritz, Mineola, N. Y., of counsel.

LeBoeuf, Lamb, Leiby & Macrae, New York City, for Michigan Mutual Ins. Co. and Millers Michigan Ins. Co.; Taylor R. Briggs, Kimba Wood Lovejoy, New York City, of counsel.

Lord, Day & Lord, New York City, for Lumbermens Mutual Casualty Co., American Motorists Ins. Co., American Manufacturers Mutual Ins. Co. and Federal Mutual Ins. Co.; Thomas D. Brislin, New York City, of counsel.

Hart & Hume, New York City, for Transamerica Ins. Co. and Maryland Casualty Co.; William D. Hand, Jr., New York City, of counsel.

POLLACK, District Judge.

This is a private antitrust suit. Plaintiffs are the Nassau, Suffolk and Queens County Associations of Insurance Agents. The three associations have a combined membership of 1000 independent insurance agents. The defendants are approximately 184 companies which are alleged to sell insurance in New York State.

The complaint premises jurisdiction on the "Sherman Act, 15 U.S.C. Sections 1–7, the Clayton Act, 15 U.S.C. Sections 12–27, 44, and the McCarran-Ferguson Act, 15 U.S.C. 1011–15."

Defendants have moved to dismiss the complaint upon two grounds. They urge under the Federal Rules of Civil Procedure 12(b) (6) that the plaintiffs lack a claim cognizable under the antitrust laws and are not members of any class which has a sufficient claim. They also argue, in the alternative, under Federal Rules of Civil Procedure 41(b), that plaintiffs' attempt to join 184 insurance companies as defendants fails to satisfy the standards for joinder of defendants, Federal Rules of Civil Procedure 20(a), and that the misjoinder is sufficiently

unfair to justify dismissal of the action for failure to comply with Rule 20(a), Federal Rules of Civil Procedure 41(b).

According to the allegations of the complaint, an independent insurance agent signs an agency agreement with one or more insurance companies, which entitles him to act to procure insurance contracts for that company or companies. Cancellation of the agency agreement is said to result in cancellation or nonrenewal of the insurance contracts the agent has placed with the company as well as incalculable indirect damage to the agent's reputation and business prospects. Each agency agreement contains a termination at will clause, and the threat of loss of the agency affiliation is alleged to be "overwhelming, coercive and intimidating."

The complaint alleges that the defendant insurance companies have maintained a policy of cancelling or threatening to cancel the agency contracts of independent agents for three major reasons:

1.) failure of the agent to maintain a balance between the types of insurance he sells (the so-called "balanced book" requirement)

2. inadequate volume of sales by the agent,

3. excessive loss ratio on policies sold by the agent.

The complaint states that "thousands upon thousands" of agency agreements have been terminated on these grounds, leading, in turn, to cancellation or nonrenewal of "hundreds of thousands" of insurance contracts.

The balanced book requirement is claimed by plaintiffs to be per se illegal as a tying arrangement among various types of insurance contracts, since it has the effect of conditioning the agent's ability to sell one kind of policy (the tying product) upon increased sales by him of another type of policy (the tied product). The requirement that an agent maintain a given volume of sales is claimed to supplement the tie-in because the agent must sell different varieties of insurance to meet the volume

level set. The termination of agency agreements because of an excessive loss ratio resulting from policies procured by the agent is attacked as "unconscionable and in bad faith and against public policy."

The complaint characterizes termination or the threat of termination for any or all of these three reasons as constituting

illegal coercion, illegal intimidation, illegal restraints of trade, all of which are in violation of the Clayton Act, the Sherman Act, the McCarran-Ferguson Act, and are unconscionable and in bad faith and violate the defendants' contractual obligation to the plaintiff agents and their insureds under the common law and the Uniform Commercial Code.

In effect, then, the complaint alleges that the cancellation policy which insurance companies are claimed to follow is an attempt to enforce a tying arrangement among various types of insurance policies, in violation of Section 3 of the Clayton Act, 15 U.S.C. Section 14 and Section 1 of the Sherman Act, 15 U.S.C. Section 1, and that the attempt to coerce agents to comply satisfies § 3(b) of the McCarran-Ferguson Act, 15 U.S.C. Section 1013(b), which provides that the Sherman Act is applicable to agreements or acts of coercion or intimidation arising from the business of insurance.

The plaintiff associations seek not only to sue on behalf of their own members but to bring a class suit on behalf of three more inclusive groups:

1.) All independent insurance agents in the State of New York who between November 1st, 1967 and April 30th, 1971 have had their contracts terminated by the defendants for reasons characterized by the defendants as "poor loss ratio", "inadequate volume" or "unbalanced book".

2.) All independent insurance agents in the State of New York who between November 1st, 1967 and April 30th, 1971 in order to prevent termination by the defendants have yielded to the coercion, intimidation and other unconscionable practices of the defendants.

3.) All innocent policyholders in the State of New York who between November 1st, 1967 and April 30th, 1971, having met all the existing underwriting requirements [sic] but were nevertheless cancelled, nonrenewed or refused normal increases in coverage merely because their agents had their agency contracts terminated by the defendants for reasons characterized by the defendants as "poor loss ratio," "inadequate volume", or "unbalanced book".

The claims of plaintiffs' members and insureds are claimed to be typical of the claims of all three groups for whom recovery is sought.

Recovery of $1,250,000,000 is sought as single damages and plaintiffs also seek an injunction requiring that defendants "restore" agents illegally terminated and a declaratory judgment that defendants have unlawfully sought to tie various kinds of insurance and to coerce agents.

The motion to dismiss raises the issue whether a non profit voluntary association may assert the rights of its members under Section 4 of the Clayton Act, 15 U.S.C. Section 15, and the related question whether an association may bring a class suit on behalf of the class of its members in an antitrust context.

Defendants claim that the association plaintiffs do not and could not claim that they have themselves suffered injury by reason of any violation of the antitrust laws. Defendants rely upon several cases, most recently Cordova v. Bache & Co., 321 F.Supp. 600, 604 (S. D.N.Y.1970) (Mansfield, J.), which seemingly hold squarely that associations may not assert their members' causes of action under Section 4.

Plaintiffs, on the other hand, ask the Court to allow them to bring this suit because of their identity of interest with their members and because they are asserting fundamental rights which

should outweigh rules of practice or court administration such as plaintiffs perceive the standing requirement to be. Plaintiffs' brief stresses that individual agents are afraid to bring suit in anticipation of reprisals and that defendants, whose acts of intimidation stand admitted for purposes of the motion, should not be rewarded—or their actions allowed to escape scrutiny—by overly technical conceptions.

Plaintiffs rely primarily upon cases which have granted associations the right to raise constitutional issues, or issues arising under other statutes or administrative determinations, on behalf of their membership. In addition, their brief asserts that the associations have suffered damage through loss of membership and diminution of revenues arising from acts affecting the business of their member-agents and should therefore be allowed to sue in their own right.

There are four decisions which have stated that an association does not hold and may not assert the rights of its members under the antitrust laws. These are: Farmers Co-Op Oil Co. v. Socony Vacuum Oil Co., 133 F.2d 101, 103–104 (8th Cir. 1942); Cordova v. Bache & Co., 321 F.Supp. 600, 604–605 (S.D.N.Y.1970); Northern California Monument Dealers Association v. Interment Association of California, 120 F. Supp. 93, 95 (N.D.Cal.1954); and Alabama Independent Service Station Association v. Shell Petroleum Corp., 28 F. Supp. 386, 390 (N.D.Ala.1939).

The Cordova decision is based on a set of facts not dissimilar to those alleged here. In that action, the complaint charged a conspiracy to reduce commissions paid to securities representatives employed by brokerage firms. The named plaintiff was the president of the 5000 man American Association of Securities Representatives and purported to sue on behalf of both the association membership and nonmember representatives. The Court held that the plaintiff had no cognizable claim which he could enforce.

[W]e are confronted with the undisputed fact that plaintiff is not an employee of any of the defendants and that neither he individually nor the Association claims that their property, business or earnings have been adversely affected in any way by the alleged conduct of the defendants. Having no stake in the outcome plaintiff therefore lacks standing to assert an antitrust claim under the Clayton Act, which permits such a suit to be brought only by a "person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 321 F.Supp. at 604.

The Court ruled that plaintiff's status as president of the securities representatives' association did not cure the defect, "since an association has no standing to assert the rights of its members under the antitrust laws," and that the plaintiff could not purport to bring a class suit since he was not a member of the class claimed to be represented.

Defendants emphasize in their citation of the Cordova case that plaintiffs do not conduct any insurance business or have any dealings with the defendants.

■ The earlier cases which have dealt with the issue reach the same result. The Farmers Co-Op decision barred a gasoline purchasing cooperative from suing to recover damages alleged to result from price fixing by gasoline companies. The Court barred the cooperative's suit on behalf of its individual members on the ground that the cooperative could not act as real party in interest under Iowa law, and barred the cooperative's attempt to sue in its own right because the allegations of the complaint alleged neither use of gasoline by the cooperative itself for any particular amount of damages sustained by it. A cooperative is now recognized to have the right to bring an antitrust action to recover for losses sustained in its "business", American Cooperative Serum Association v. Anchor Serum Co., 153 F.2d 907, 912 (7th Cir.) cert. denied, 329 U.S. 721, 67 S.Ct. 57, 91 L.Ed. 625 (1946), Cooperativa de Sequros Multiples de

Puerto Rico v. San Juan, 294 F.Supp. 638, 640 (D.P.R.1968), but that does not blunt the requirement that the membership organization must assert and have sustained damages to its own business operations of a sort cognizable under the statute.

Both the Alabama Independent Service Station ruling, which also dealt with an attempt to recover for price fixing violations, and the Monument Dealers ruling, which concerned alleged concerted refusals to deal, were based on the brief recital that an association was not the real party in interest to assert damages to its members in an antitrust context, although the latter decision did note that the "complaint fails to allege that plaintiff has ever been engaged in business itself, or that plaintiff has ever sustained damages at the hands of defendants". 120 F.Supp. at 94. See also, Contract Buyers League v. F. & F. Investment Co., 300 F.Supp. 210, 230–231 (N.D.Ill.1969), aff'd sub nom. Baker v. F & F Investment, 420 F.2d 1191 (7th Cir.), cert. denied 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970) (association could not continue to represent its members in suit alleging, inter alia, fixing of housing prices; "Stated simply . . . there is no relief which this Court is being asked to grant for or against the Contract Buyers League." 300 F.Supp. at 231); Louisiana Petroleum Retail Dealers, Inc. v. Texas Co., 148 F.Supp. 334, 337 (W.D.La., 1956).

California League of Independent Insurance Producers v. Aetna Casualty & Surety Company, 175 F.Supp. 857 (N. D.Cal.1959) was a suit very much like the instant action. It dealt with allegations that defendant insurance companies conspired to decrease the rate of commission paid insurance agents. While the district court dismissed the suit on substantive grounds, it noted that the status of the association plaintiff was "ambiguous" and that the association could not sue as merely an agent for collection for its members. 175 F. Supp. at 861.

Plaintiffs argue that defendants mount formalism upon formalism in an attempt to deprive them of a hearing. However, the rights here raised are not cognizable under Section 4 of the Clayton Act, which, as Judge Mansfield noted, provides a cognizable claim only to one injured in his business or property by reason of anything forbidden in the antitrust laws. The Association's complaint makes it clear that it is attempting to enforce the rights of its members not any rights it has or claims on its own behaf.

The Second Circuit's rulings have stressed that an antitrust plaintiff must be within the target area of the alleged violation. Calderone Enterprises Corp. v. United Artists Theatre Circuit Inc., 454 F.2d 1292 (2d Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972) (lessor could not recover damages for antitrust conspiracy which allegedly lessened the profits earned by its lessee). See also Conference of Studio Unions v. Loew's Inc., 193 F.2d 51, 53 (9th Cir. 1951), cert. denied 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952) (claiming, inter alia, that defendants' acts would destroy conference of labor unions; "damage the appellants suffered . . . was incidental to the accomplishment of [defendants' alleged] illegal object." 193 F.2d at 54.)

Judge Mansfield, in Cordova, specifically rejected the argument, made in detail here, that cases allowing suits based on constitutional claims could cure the defect created by the language of the antitrust laws. 321 F.Supp. at 604.

There is a serious question whether the joinder attempted here can be sustained in any event. However, it is unnecessary to reach that point.

The complaint is dismissed pursuant to Rule 12(b) (6) Federal Rules of Civil Procedure.

So ordered.