The NASSAU COUNTY ASSOCIATION OF INSURANCE AGENTS, INC., et al., Plaintiffs-Appellants,

v.

AETNA LIFE & CASUALTY CO., et al., Defendants-Appellees.

No. 890, Docket 73-2359.

United States Court of Appeals, Second Circuit.

Argued April 23, 1974.

Decided May 29, 1974.

Frederick Fagelson, Bay Shore (Donner, Fagelson, Hariton & Berka, P. C. and Richard M. Sherman, Bay Shore, N. Y., on the brief), for plaintiffs-appellants.

Henry L. King, New York City (Davis Polk & Wardwell, New York City, on the brief), on behalf of Steering Committee for defendants-appellees.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON,* District Judge.

LUMBARD, Circuit Judge:

Seeking to recover over $3,750,000,000 in treble damages from 164 insurance companies, four unincorporated associations of insurance agents, the Nassau County Association of Insurance Agents, the Suffolk County Association of Insurance Agents, the Independent Insurance Agents Association of Queens, and the Richmond County Association of Insurance Agents, commenced this class action on behalf of member and independent insurance agents and their policyholders in the Southern District on November 3, 1972, alleging that the defendants had terminated or threatened to terminate thousands of agency contracts with the insurance agents on grounds violative of the federal antitrust laws.[1] Specifically, it was alleged that agents were required regularly to sell new lines of insurance, meet higher minimum volume requirements, and maintain a low pay-out ratio on policies sold or face termination. Plaintiffs contended that en-

forcement of these requirements by the defendant insurance companies represented "illegal coercion, illegal intimidation, illegal restraints of trade, all of which are in violation of the Clayton Act, the Sherman Act, [and] the McCarran-Ferguson Act. . . ."[2]

On July 24, 1973, Judge Stewart dismissed the action on the ground that the plaintiff associations lacked standing to sue under the antitrust laws in either their own or a representative capacity, 361 F.Supp. 967. He emphasized that under § 4 of the Clayton Act, 15 U.S.C. § 15, a plaintiff must demonstrate that it has either sustained direct injury in its "business or property" or that it was in the "target area" of the alleged illegal conduct, that is, a party against whom the illegal activity was aimed.[3] We affirm for the reasons given by Judge Stewart and because of the misjoinder of parties.

## I.

Section 4 of the Clayton Act, 15 U.S. C. § 15, provides that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in

---

* Senior District Judge of the District of Montana, sitting by designation.

1. Specifically, plaintiffs claimed to represent the interests of all member and independent insurance agents who had since November 1, 1967 either had their agency contracts terminated or had sought to comply with defendants' alleged illegal requirements in order to prevent termination, as well as policyholders in New York whose policies had been cancelled or not renewed because of termination or threatened termination of their particular agent's contract with a defendant. Plaintiffs also included themselves within the class, claiming that they had suffered a decrease in membership and dues as a result of defendants' actions.

2. Of the $3,750,000,000 in damages claimed as a result of these alleged antitrust violations, only $750,000 is sought by plaintiffs for injury to their business and property. $1,000,000,000 is claimed for insurance agents who had had their contracts terminated since November 1, 1967. $500,000,000 is sought for agents who had yielded "to the coercion, intimidation, and other unconscionable practices of the defendants" since November 1, 1967, in order to avoid having

their contracts terminated. An additional $1,000,000,000 is sought for policyholders who had met all existing underwriting requirements "but were nevertheless cancelled, nonrenewed or refused normal increases in coverage merely because their agents had their agency contracts terminated. . . ."

3. On July 13, 1972, a similar suit brought by three of the four plaintiffs had been dismissed for the same reason that plaintiffs lacked standing. Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Cas. & Sur. Co., 345 F.Supp. 645 (S.D.N.Y.1972). Unlike the present action, however, see n. 2 *supra*, plaintiffs in that earlier proceeding claimed no actual damage to themselves and sought relief solely on behalf of individual agents terminated or threatened with termination.

No appeal was taken from the dismissal of this prior action. When the present action was commenced defendants raised the defense of res judicata, relying on the dismissal in the prior action. Judge Stewart, however, found it unnecessary to decide this question or defendant's additional claim of misjoinder under F.R.Civ.P. 20(a) as he rested the dismissal instead on plaintiffs' lack of standing.

the antitrust laws may sue therefor . . . ." As we emphasized in Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183, 187 (2d Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971):

"The statutory requirement that treble damage suits be based on injuries which occur 'by reason of' antitrust violations expressly restricts the right to sue under this section . . . . [A] plaintiff must allege a causative link to his injury which is 'direct' rather than 'incidental' or which indicates that his business or property was in the 'target area' of the defendant's illegal act."

■ Plaintiffs here have pointed to no direct injury suffered as a result of the practices engaged in by defendants. Nor have they shown that they were in the target area of the actions by the defendants. Plaintiffs neither do business with the defendant insurance companies nor compete with them. Indeed the only loss alleged by plaintiffs is a decrease in membership and dues as a result of the termination of contracts with certain agents by defendants. This injury is too remote, however, to confer standing under the Clayton Act. In Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292 (2d Cir. 1971), cert. denied, 406 U.S. 930, 92 S. Ct. 1776, 32 L.Ed.2d 132 (1972), we affirmed the trial court's dismissal of an antitrust suit brought by the lessor of a movie theatre, who alleged that the defendant motion picture distributors had conspired to deny his lessee certain profitable first-run films. The plaintiff claimed that as a result of the defendants' practices it had suffered considerable losses, since the rent paid by the lessee was based on a percentage recapture of gross receipts from the exhibition of movies. We held, however, that this was not a sufficiently direct injury to confer standing on the plaintiff and stressed that a line had to be drawn between "those who have suffered economic damage by virtue of their relation-

ships with 'targets' " and those who are the " 'targets' themselves." *Id.* at 1295.

The Ninth Circuit had previously adopted the same position in a case closely resembling the present one. In Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9th Cir. 1951), cert. denied, 342 U.S. 919, 72 S.Ct. 367, 96 L. Ed. 687 (1952), the court of appeals affirmed the district court's dismissal of a complaint by a conference of trade unions which alleged that as a result of illegal anticompetitive practices engaged in by major motion picture producers and a rival union aimed at lessening competition from independent producers, members of its member unions had lost their jobs and withdrawn from the unions with a resultant loss in the conference's revenues. The court rejected this claim, finding the damage alleged too incidental to confer standing.

Plaintiffs, nevertheless, argue that they should be afforded standing since their members fear "reprisal and retaliatory action" should they be named individually in a suit against the defendant insurance companies. Plaintiffs maintain that the McCarran-Ferguson Act was intended to protect against such intimidation and allude to N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), in which the Supreme Court upheld the standing of the N.A.A.C.P. to represent the interests of its members.

There is no merit whatever to this argument. As Judge Weinfeld emphasized in Free World Foreign Cars, Inc. v. Alfa Romeo S.p.A., 55 F.R.D. 26 (S.D.N.Y. 1972) in rejecting a similar argument:

"The history of antitrust litigation records instance after instance where small dealers have not hesitated to take on giant corporations in antitrust litigation, and there is no basis to assume that if any dealer for whom plaintiff professes to speak believes the franchise agreement violative of our antitrust laws, he is not capable or would not hesitate to bring suit to vindicate his rights." 55 F.R.D. at 29.

Moreover, the situation here is unlike the one in N.A.A.C.P. v. Alabama, *supra*, in which the very right which plaintiff sought to preserve was the anonymity of its membership, so that having required individual members to bring suit would have resulted "in nullification of the right at the very moment of its assertion." 357 U.S. 449 at 459, 78 S.Ct. 1163 at 1170, 2 L.Ed.2d 1488.[4]

## II.

■ Not only do plaintiffs lack standing to bring this antitrust action, but by joining the 164 defendant companies in one action they have failed to comply with Rule 20(a) of the Federal Rules of Civil Procedure relating to joinder of defendants. Rule 20(a) provides that

> "All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Here there has been no showing of a right to relief arising from the same transaction or series of transactions. No allegation of conspiracy or other concert of action has been asserted. No connection at all between the practices engaged in by each of the 164 defendants has been alleged. Their actions as charged were separate and unrelated, with terminations occurring at different times for different reasons with regard to different agents.

Kenvin v. Newburger, Loeb & Co., 37 F.R.D. 473 (S.D.N.Y.1965) involved a similar, though less extreme situation. There, plaintiff joined four stockholders, who, he alleged, had extended credit to him in violation of Federal Reserve Board Regulations and the Securities Exchange Act. The wrongdoing of each defendant was identical, but the loans and securities involved and the dates on which the transactions were entered into differed. The court held that defendants had been misjoined since plaintiff had merely "alleged against each of the four defendants distinct and unrelated acts which happened to involve violations of the same statutory duty" and the "operative facts" of each transaction were unrelated to those of any other.

Here, unrelated transactions running into the thousands are asserted as the basis of joinder. Indeed, plaintiffs have not limited joinder of insurance companies on the basis of insurance agents whose contracts have been terminated or who have been threatened with termination, but have also sought to join defendants on the basis of policyholders whose policies were cancelled or not renewed because of the termination of the agency contract with their particular agent by one of the defendant insurance companies.

■ The misjoinder here, resting on thousands of unrelated transactions, is such a gross abuse of procedure that dismissal under F.R.Civ.P. 41(b) for failure to comply with the federal rules is warranted. Although the usual remedy under Rule 21 is severance, that would be inadequate to remedy the present abuse since the result would be thousands of individual actions, in all of which the association, rather than individual agents and policyholders, would be plaintiff.

---

4. For the same reasons, plaintiffs also lack standing to sue for injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26. United States v. Borden Co., 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954); SCM Corp. v. Radio Corp. of America, 276 F.Supp. 373 (S.D.N.Y.1967), aff'd, 407 F.2d 166 (2d Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); Reibert v. Atlantic Richfield Co., 471 F.2d 727, 731 (10th Cir.), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973).

Although we affirm Judge Stewart's dismissal of this action, the rights of any aggrieved individuals to seek appropriate relief are in no wise affected.

Affirmed.

HAYS, Circuit Judge (concurring in the result):

I concur in the result and in Part II of the opinion.