RESERVE SUPPLY CORP., Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORP. and CertainTeed Corp., Defendants.

No. 83 C 3766.

United States District Court, N.D. Illinois, E.D.

July 25, 1986.

Richard P. Campbell, Anthony DiVincenzo, Campbell & DiVincenzo, Robert N. Sodikoff, Greenberg, Keele, Lunn & Aronberg, Chicago, Ill., for plaintiff.

Earl L. Pollock, Robert T. Joseph, Jeffrey L. Dorman, Sonnenschein, Carlin, Nath & Rosenthal, Douglas F. Fuson, David F. Graham, Shelley C. Chapman, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DUFF, District Judge.

This antitrust action, which concerns alleged price-fixing and discriminatory pricing in the residential fiberglass insulation industry, is before the court on the motions of all three parties for summary judgment.

There are three counts to the complaint. Count I alleges that defendants Owens-Corning Fiberglas Corp. ("Owens-Corning") and CertainTeed Corp. ("Certain-Teed") violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring with each other and unnamed others to fix the prices they would charge customers, including plaintiff Reserve Supply Corp. ("Reserve"), for fiberglass insulation. Count II alleges that defendants violated the Robinson-Patman Act, 15 U.S.C. § 13(a), by selling fiberglass insulation to Reserve's competitors for less than they charged Reserve. In each of the first two counts, Reserve seeks treble damages and injunctive relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

Count III charges defendants with unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 261 *et seq.*, and seeks monetary and injunctive relief.

Presently before the court are three summary judgment motions: cross-motions by Reserve and CertainTeed concerning CertainTeed's liability on the Robinson-Patman claim (Count II), and a motion by Owens-Corning (joined by CertainTeed) directed against the entire complaint, contending that as a matter of law Reserve has not suffered any antitrust injury and therefore lacks standing to maintain this action. Owens-Corning's motion, as the more comprehensive attack, will be addressed first.

## I. OWENS–CORNING'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF STANDING

Owens-Corning seeks summary judgment on the ground that because of its corporate structure, Reserve itself has suffered no injury from the acts it complains of and therefore lacks standing to maintain this antitrust action.

Reserve is a corporation that functions as a cooperative. Its shareholders are approximately 379 member lumber dealers who purchase fiberglass insulation and other basic building supplies from Reserve. Reserve sells fiberglass insulation to members and non-members alike at a single price set to yield the highest profit given prevailing market conditions. Reserve places orders with manufacturers for direct shipment to dealers; manufacturers then

invoice Reserve, which collects from the dealers.

Sometime after the end of each fiscal year, Reserve's members receive patronage rebates paid from the company's annual profits. Each member's rebate reflects the extent of Reserve's sales revenue attributable to that member's purchases, reduced by its cost of acquiring the goods sold to that member, and further reduced by an apportionment of its overhead expenses. Some members—those whose investments are "funded"—receive their rebates entirely in cash or notes, while so-called "non-funded" members receive only 43% of their rebates in cash, with Reserve retaining the balance as working capital. Reserve pays no income tax on revenue attributable to sales to its members.

■ Defendants argue that because Reserve's corporate structure enables members to purchase fiberglass insulation at Reserve's cost plus minor overhead expenses, Reserve is simply a conduit to its members and not a distinct entity capable of suffering the antitrust injury that is a prerequisite to standing in an antitrust action, *see Brunswick v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 485–86, 97 S.Ct. 690, 695–96, 50 L.Ed.2d 701 (1977). If any cause of action for an antitrust violation exists, defendants contend, it belongs to Reserve's members rather than Reserve itself.

Defendants' analysis of Reserve's corporate structure and its legal consequences is flawed in a number of respects. First, it ignores Reserve's sales to non-members. Because it retains its profits from sales to outside customers and distributes those profits to its members, Reserve has standing to sue for any antitrust violation diminishing its sales to non-members.

Second, since Reserve retains a substantial portion of its profits on sales to non-funded members, an antitrust violation reducing the purchases of those members necessarily reduces Reserve's working capital. Similarly, since Reserve distributes patronage rebates only once each year, it gains the temporary use of those rebates. An antitrust violation that reduces Reserve's sales to its members, and thus the rebates members earn, injures Reserve by reducing this pool of temporary working capital.

Third, defendants are mistaken in contending that, because Reserve's members are free to purchase insulation from distributors receiving lower prices than Reserve, price discrimination does not injure those members. By denying Reserve access to the lowest market price, defendants force Reserve's members to choose between sacrificing the patronage rebates they would earn by purchasing from Reserve, or foregoing a lower price available elsewhere. If defendants offered the low price to all distributors on a non-discriminatory basis, Reserve's members could take advantage of both competitive prices and patronage rebates.

Fourth, and most important, the Seventh Circuit has expressly rejected defendants' position. In *American Cooperative Serum Association v. Anchor Serum Co.*, 153 F.2d 907 (7th Cir.1946), the court considered an action brought under the Robinson-Patman Act by a cooperative that manufactured and sold veterinary medicines to its members:

Defendants further urge that the court erred in rejecting their plea that plaintiff cannot maintain this action because it is one to be asserted by plaintiff's members rather than itself, because, as they say, any amount recovered in such action would not be the property of plaintiff but its members. We think the court did not err in this respect. It seems clear that the amount recoverable in this action, if any, would have been in the first instance the property of the corporate entity, would have belonged to its treasury, and would have been subject to its corporate purposes and available for the payment of its creditors, if any; and that the individual members would acquire no right or interest therein until in due course the action of plaintiff's board of directors had fixed the amount of the patronage dividend and there had been a separation of funds from the corporate treasury. The plaintiff is a corporate entity and we find no authority which

prevents it from suing in its name on its contracts or for a violation thereof, notwithstanding the fact that a portion of the amount recovered, if any, would eventually go to and belong to its members.

153 F.2d at 912–13. This court sees no way to distinguish *Anchor Serum* and Owens-Corning has offered none.[1]

■ For the reasons discussed above, this court concludes that Reserve has standing to maintain this antitrust action. Owens-Corning's motion for summary judgment is denied.[2]

## II. RESERVE'S AND CERTAINTEED'S CROSS–MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUE OF CERTAINTEED'S LIABILITY UNDER THE ROBINSON–PATMAN ACT

Reserve alleges in Count II that defendants have sold fiberglass insulation, for resale within the United States, to Reserve's competitors at prices below those charged Reserve for the same product, in violation of § 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).[3] Reserve seeks summary judgment against CertainTeed on the issue of liability. CertainTeed has filed a cross-motion for summary judgment on the ground that any price discrimination resulted from its good faith effort to meet competition, and was therefore permissible under § 2(b) of the Robinson-Patman Act, 15 U.S.C. § 13(b).

### A. *Reserve's Motion for Summary Judgment*

Reserve must prove two elements to establish a prima facie case under § 2(a) of the Robinson-Patman Act: first, that CertainTeed discriminated in price "between different purchasers of commodities of like grade and quality", 15 U.S.C. § 13(a); and second, that "the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition, *id.* See *Dean Milk Co. v. Federal Trade Commission,* 395 F.2d 696, 700 (7th Cir.1968).

### 1. *Discrimination in Price*

■ Undisputed evidence establishes that at various times since 1979 CertainTeed has sold fiberglass insulation at prices below those simultaneously offered Reserve to at least five distributors which, like Reserve, operate as buying organizations or cooperatives that purchase insulation primarily for direct shipment to their members. These distributors are: Builder Marts of America ("BMA"); Lumbermen's Merchandising Corp. ("LMC"); Hardware Wholesalers, Inc. ("HWI"); Central Builders Supply ("CBS"); and Ace Hardware Co. ("Ace").[4] This constitutes discrimination in

---

**1.** Although defendants cite more recent authority from two other circuits which arguably conflicts with *Anchor Serum, see Alexander v. National Farmers Organization,* 687 F.2d 1173, 1208–09 (8th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313; *Nassau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Co.,* 497 F.2d 1151, 1153 (2d Cir.1974), *cert. denied,* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184, they have not cited, and the court has not found, any authority from this circuit undermining its principles.

**2.** Owens-Corning maintains that because Reserve has suffered no injury under the antitrust laws, it has also failed to show "damage" in Count III, as required by Ill.Rev.Stat. ch. 121½ § 270a. Owens-Corning's argument on Count III falls within its arguments on the antitrust claims in Counts I and II.

**3.** Section 2(a) of the Clayton Act provides:

That it shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States ..., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

15 U.S.C. § 13(a).

**4.** Reserve identifies only BMA, LMC, and HWI as receiving discounts from CertainTeed, and fails to point to any evidence supporting its

price, and satisfies the first prong of the test for a Robinson-Patman violation.

### 2. *Effect of Price Discrimination on Competition*

■ The second prong of the test concerns the effect of the price discrimination on competition. A plaintiff need not prove actual injury to competition; it is enough to establish "a reasonable possibility that a price difference may harm competition." *Falls City Industries, Inc. v. Vanco Beverage, Inc.,* 460 U.S. 428, 434–35, 103 S.Ct. 1282, 1288–89, 75 L.Ed.2d 174 (1983). This may be shown either by direct evidence of displaced sales or by "proof of a substantial price discrimination between competing purchases over time, where that proof is unrebutted by evidence breaking the causal connection between a price differential and lost sales." *Id.* 103 S.Ct. at 435, 103 S.Ct. at 1288.

#### a. *Direct Evidence of Displaced Sales*

■ Reserve has not demonstrated any lost sales attributable to price discrimination. Reserve's only admissible evidence on this issue consists of deposition testimony and an internal CertainTeed memorandum indicating that CertainTeed officials believed that a portion of CertainTeed's increased sales to BMA from 1979 and 1980 reflected sales "shifted" to BMA from distributors to which CertainTeed charged higher prices, such as Reserve. (Deposition of Harold Ewaldsen at 39–40; Ewaldsen dep. Ex. 5.) This evidence about the speculations of CertainTeed officials is insufficient to establish that Reserve lost sales because of CertainTeed's price discrimination.

■ Reserve does offer additional evidence concerning lost sales, but that evidence fails to meet the standards of Rule 56(e). The deposition testimony of Reserve official R.G. Hamrick, relating conversations in which former Reserve customers told him they had begun purchasing insulation from lower-priced distributors, is inadmissible hearsay. Exhibit G to Reserve's Memorandum in support of its motion for summary judgment, which purports to summarize Reserve's lost sales, is presented without identification of its source, and without any supporting or authenticating affidavit. It is likewise inadmissible.

■ Reserve also attempts to support its claim of lost sales with the deposition testimony of Larry Sharken. Sharken testifies that the company for which he works purchased insulation from BMA rather than from Reserve as a direct result of CertainTeed's price discrimination. Reserve mailed Sharken's deposition to the court, unsolicited, more than four months after the summary judgment motions became fully briefed. Reserve neither sought nor was granted leave to file the deposition, and it has not become a part of the official record. Because Sharken's deposition is not properly before the court, it cannot be considered in support of Reserve's motion for summary judgment.[5]

#### b. *Proof of Substantial Price Discrimination Over Time*

Even without direct proof of lost sales, Reserve could still obtain summary judgment on the question of liability if it were able to establish the existence of "substantial price discrimination between competing

claim of price discrimination in favor of HWI. CertainTeed comes to Reserve's aid in its own motion for summary judgment, however. Not only does CertainTeed supply evidence of price discrimination against Reserve in favor of HWI, but it also produces evidence establishing price discrimination in favor of CBS and Ace. *See* CertainTeed's Statement of Undisputed Material Facts at 140; CertainTeed's Statement of Genuine Issues of Material Fact at A.7–A.9; deposition of Robert S. Mobley at 102–06; affidavit of Robert S. Mobley at ¶ 15. Because this evidence would be admissible at trial, the court considers

it as if it had been produced in support of Reserve's motion for summary judgment.

**5.** Even if the court were to consider the depositions of Sharken and Hamrick and Reserve's Exhibit G, and to determine that they are sufficient to complete Reserve's prima facie showing of a Robinson-Patman violation, the court would still have to deny Reserve's motion for partial summary judgment because of CertainTeed's valid "good faith meeting competition" defense, discussed in part IIB of this opinion, *infra.*

purchasers over time." *Falls City Industries, Inc., supra* at 435, 103 S.Ct. at 1288. What constitutes "substantial" price discrimination, and the time over which it must persist to give rise to a Robinson-Patman violation, have never been precisely defined. Two Supreme Court opinions serve as guideposts, however. In *Federal Trade Commission v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), the Court held that an established policy granting discounts of five and ten percent on the basis of volume violated the Robinson-Patman Act, and in *Falls City Industries, Inc., supra*, the Court found a Robinson-Patman violation where the defendant charged some distributors ten to thirty percent more than others over several years.

 Reserve's showing on the existence of substantial price discrimination over time consists of excerpts from the depositions of two CertainTeed officials. First, Reserve relies on the testimony of Robert Mobley that at the time of his deposition on October 4, 1984, CertainTeed's price to Reserve in "trading area 175" was approximately ten percent higher than its price to BMA. (Mobley dep. at 105–06; CertainTeed's Statement of Genuine Issues of Material Fact at A.9.) Second, Reserve cites the testimony of CertainTeed's vice-president of marketing, George A. Hoffman, that CertainTeed began selling fiberglass insulation to BMA at a discount in 1979. (Hoffman dep. at 46, 51–52, 59–60.)

Reserve has produced no evidence that the ten percent price disparity in 1984 extended beyond trading area 175, or that trading area 175 is a marketing territory of substantial size. Nor has Reserve shown that CertainTeed's price to BMA exceeded its price to Reserve in 1979, or that if any price disparity did exist in 1979, it continued until 1984. The undisputed evidence does not permit a finding that CertainTeed engaged in "substantial price discrimination between competing purchasers over time," *Falls City Industries, Inc., supra*.

Because Reserve has failed to establish either lost sales attributable to CertainTeed's price discrimination or the existence of substantial price discrimination over time, Reserve's motion for partial summary judgment on the issue of liability is denied.

**B.** *CertainTeed's Motion for Summary Judgment*

CertainTeed contends that it is entitled to summary judgment on the ground that any price discrimination resulted from its good faith efforts to meet competition.[6] For the purposes of its summary judgment motion on the "meeting competition" defense, CertainTeed concedes the existence of price discrimination.

Section 2(b) of the Robinson-Patman Act permits a seller to rebut a prima facie case of price discrimination "by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor." 15 U.S.C. § 13(b). The meeting competition defense is absolute, *Standard Oil Co. v. Federal Trade Commission*, 340 U.S. 231, 246–47, 71 S.Ct. 240, 247–48, 95 L.Ed. 239 (1951), and "at least requires the seller, who has knowingly discriminated in price, to show the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor," *Federal Trade Commission v. A.E. Staley Manufacturing Co.*, 324 U.S. 746, 759–60, 65 S.Ct. 971, 977, 89 L.Ed. 1338 (1945).

CertainTeed's § 2(b) defense has two parts. First, with respect to Reserve's claims concerning price discrimination by CertainTeed in favor of distributors other than BMA, CertainTeed contends that it granted discounts to those distributors pursuant to a strict procedure for recording and verifying reports of competitors' pricing, and that this procedure was sufficient

---

**6.** CertainTeed also seeks summary judgment on the ground that Reserve has suffered no antitrust injury and therefore lacks standing to maintain this action. The court addressed that argument in part I of this opinion.

to comply with § 2(b). Second, with respect to Reserve's claims concerning price discrimination by CertainTeed in favor of BMA, CertainTeed argues that it granted discounts to BMA in good faith reliance on a BMA official's reports of a lower price offered by a competitor.

### 1. *Adequacy of CertainTeed's Competitive Pricing Procedure*

■ CertainTeed permits its local, area, and regional personnel to recommend reductions in the price of fiberglass insulation to individual customers in order to meet prices that competitors have offered to those customers. Each recommendation must be in writing and must identify both the customer and the competitor and specify the competitor's price. The report of the competitor's price must be based either on documentary evidence or a direct statement from the customer. These "Reports of Competition" are reviewed by CertainTeed officials who assess the credibility of the reported prices based on their knowledge of the industry, then either request more information or determine whether CertainTeed will meet the reported price. The corporate officials notify the author of the report of their decision, and require re-verification of the competitor's price on a regular basis—although this re-verification can simply take the form of obtaining assurance from the customer that the competitor's price remains in effect.

Reserve disputes neither the existence of the Report of Competition procedure nor CertainTeed's assertion that it has consistently followed that procedure in granting discounts to distributors other than BMA. Reserve also fails to contest—either by evidence or argument—CertainTeed's claim that its Report of Competition policy satisfies the requirements of § 2(b).

The court agrees with CertainTeed that this formal Report of Competition procedure establishes sufficient safeguards to justify CertainTeed's good faith belief that

discounts offered pursuant to the procedure were meeting, but not beating, a competitor's price. "A good faith belief, rather than absolute certainty" is sufficient to satisfy § 2(b). *United States v. United States Gypsum Co.*, 438 U.S. 422 at 453, 98 S.Ct. 2864, 2881, 57 L.Ed.2d 854. Moreover, one circuit has suggested in dicta that a similar procedure for verifying competitor's prices before offering discounts is acceptable under § 2(b). *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1046–47 (9th Cir. 1981).

■ Because CertainTeed has produced unrebutted evidence that it granted discounts to distributors other than BMA only after efforts to verify reports of competitor's prices to those distributors, and because Reserve has failed to question CertainTeed's showing of good faith, CertainTeed is entitled to summary judgment on all claims concerning its alleged price discrimination against Reserve and in favor of distributors other than BMA.

### 2. *Good Faith of CertainTeed's Discounts to BMA*

■ From 1976 to 1979, CertainTeed unsuccessfully attempted to sell fiberglass insulation to BMA, a major distributor of fiberglass insulation in the southeastern United States. BMA relented in 1979, and the two companies negotiated an agreement calling for BMA to begin purchasing approximately 25 percent of its annual requirements from CertainTeed. CertainTeed contends that in establishing its price to BMA, it acted in good faith to meet what it reasonably believed were other manufacturers' prices to BMA, even though it failed to fully comply with its own Report of Competition procedure.

The parties disagree about the details of the negotiations between CertainTeed and BMA, but this much is clear: BMA demanded a price equivalent to X percent off the competitive dealer list price on all fiberglass insulation products and an additional Y percent off on two foil-backed products.[7]

---

**7.** Prices in the industry are ordinarily measured in terms of percentages off a standard dealer list price, which is uniform among different manufacturers. Because the specific numerical percentages are not material to this discussion and CertainTeed has requested that they not be disclosed, the expressions "X" and "Y" are em-

In so doing, BMA promised CertainTeed that BMA "would not let [CertainTeed] sell us at a price that was below prices that we had been quoted or prices that we felt and strongly believed were in the marketplace." (Lee dep. at 45.) CertainTeed's director of marketing and its marketing manager for residential insulation, whose duties required a familiarity with the market for fiberglass insulation among buyer organizations similar to BMA, discussed BMA's demand and concluded that a discount of approximately X percent was consistent with CertainTeed's pricing to other distributors and with reports of competitive pricing. (Mobley aff. at ¶ 28; Hoffman aff. at ¶ 10.) CertainTeed eventually agreed to the X percent discount, and BMA assured it that its price was not "overly competitive." (Lee dep. at 44–46.)

After sales began, CertainTeed periodically asked BMA if the competitive price was still in existence. Each time, BMA replied that CertainTeed's prices were not below those of BMA's principal supplier, Owens-Corning. (Mobley aff. at ¶¶ 34–37; McCaskill aff. at ¶ 12.) CertainTeed argues that these facts require summary judgment in its favor under § 2(b). In opposition to CertainTeed's motion, Reserve contends that CertainTeed failed to satisfy the requirements of § 2(b) because it did not adequately verify the competitive price it agreed to meet.

While "casual reliance on uncorroborated reports of buyers or sales representatives without further investigation may not ... be sufficient to make the requisite showing of good faith," *United States v. United States Gypsum Co.*, 438 U.S. 422, 453, 98 S.Ct. 2864, 2881, 57 L.Ed.2d 854 (1978), no rigid rule defines the elements that *are* sufficient to establish a § 2(b) defense, *id.* 438 U.S. at 454, 98 S.Ct. at 2882. Rather, the inquiry into good faith is fact-specific, with the relevant factors varying somewhat from case to case. *Id.* at 454–55, 98 S.Ct. at 2882–83.

In *United States Gypsum*, the Supreme Court suggested five factors that courts might consider in appraising a seller's good

faith: (1) evidence that the seller received reports of similar discounts from other customers; (2) evidence that the seller was threatened with a termination of purchases if the discount were not met; (3) documentary evidence; (4) an appraisal of the reasonableness of the reported price in terms of available market data; and (5) the seller's past experience with the buyer in question. 438 U.S. at 455, 98 S.Ct. at 2882.

Here the record establishes that BMA demanded a discount of X percent and told CertainTeed—either explicitly or implicitly—that a comparable price was available to it from other suppliers. Under these circumstances it was reasonable for CertainTeed to infer that BMA would not purchase fiberglass insulation from Certain-Teed unless it complied with BMA's demand.

The record also establishes that the two CertainTeed officials who reviewed the proposed price to BMA were familiar with pricing in the industry and did not find the proposed discount inconsistent with prices they knew to exist in the industry. Reserve argues strenuously that this review was deficient because it involved neither direct examination of CertainTeed's records nor any formal analysis. A formal review of CertainTeed's records was not necessary, however. As director of marketing and marketing manager for residential insulation, respectively, the CertainTeed officials who evaluated the proposed price to BMA were well-qualified to pass on its reasonableness without recourse to their filing cabinets and computers.

Moreover, although CertainTeed had not previously done business with BMA, BMA was not an entirely unknown quantity to CertainTeed. CertainTeed officials knew BMA as a major buyer organization for building materials in the southeastern United States, and knew that BMA purchased much of its fiberglass insulation from the leading manufacturer of that product, Owens-Corning. To all appearances, BMA was not a marginal business operating on the fringes of legitimacy, but a well-estab-

ployed in lieu of the actual percentages through- out this opinion.

lished and sound firm. In addition, one of the three CertainTeed officials negotiating with BMA had dealt with BMA in a similar capacity for a former employer approximately five years earlier. As a result of those dealings, that official had come to know both BMA and the BMA official negotiating with CertainTeed, and to the best of his knowledge neither BMA nor that official had ever misled him. In short, nothing about BMA engendered suspicion.

Finally, the record demonstrates that CertainTeed's price to BMA in fact was comparable to a competitor's price. At the time BMA and CertainTeed reached their pricing agreement, Owens-Corning's price to BMA was X percent off dealer list on all products. CertainTeed's price to BMA differed only in that CertainTeed allowed BMA an additional Y percent off on two foil-backed products that, as CertainTeed has asserted without contradiction by Reserve, make up only a small portion of CertainTeed's product mix. The two manufacturers' prices to BMA were also comparable in July, 1984, the most recent date for which evidence is before the court. CertainTeed's discount then was identical to its discount in 1979, while Owens-Corning's discount was somewhat larger, standing at X percent with an additional dollar allowance per truckload, equivalent to slightly more than Y additional percentage points off list. Although the fact that CertainTeed's price to BMA turned out to be so close to an actual competitive price does not conclusively prove CertainTeed's reasonableness in relying on BMA's representations, it is entirely consistent with such an interpretation of CertainTeed's conduct.

In sum, BMA's implicit refusal to buy insulation unless CertainTeed offered a X percent discount, the consistency of that discount with prices CertainTeed officials knew to be present in the marketplace, BMA's repeated assurances that a competitor was offering a similar price, CertainTeed's knowledge of BMA and the BMA official with whom it was negotiating, and the actual similarity between CertainTeed's and Owens-Corning's prices to BMA, all suggest that CertainTeed was reasonable in believing that its discount to BMA was necessary to meet competition. The cumulative force of this evidence is sufficient to overcome Reserve's claim that CertainTeed should have done more to verify BMA's reports of competitive pricing.

█ In addition to arguing that CertainTeed failed to adequately verify reports of competitive pricing before granting its discount to BMA, Reserve objects to CertainTeed's good faith defense on another ground. It argues that the good faith defense only permits firms to meet the *lawful* prices of their competitors, *see Standard Oil Co. v. Federal Trade Commission,* 340 U.S. 231, 242, 71 S.Ct. 240, 245, 95 L.Ed. 239 (1951); *Dean Milk Co. v. American Processing and Sales Co., Inc.,* 1950–51 Trade Cas. (CCH) ¶ 62,777 (N.D.Ill. 1951), and that CertainTeed knew Owens-Corning's price to BMA was unlawfully discriminatory before it agreed to meet that price. Reserve supports this argument by pointing to deposition testimony of George Hoffman, CertainTeed's vice-president of marketing for residential insulation, which indicates that when he approved CertainTeed's discount to BMA, he knew that not all Owens-Corning customers were receiving prices as low as that reported by BMA. (Hoffman dep. at 51, 126.)

Hoffman's testimony, however, suggests only that CertainTeed knew Owens-Corning charged different prices to different customers, not that those differences were unlawful. Price disparities among customers may exist for lawful reasons, including differences in cost of manufacture, sale, or delivery, *see* 15 U.S.C. § 13(a), and differences resulting from the good faith meeting of competition, *see* 15 U.S.C. § 13(b). Without stronger evidence, it would be unreasonable to require CertainTeed to have assumed Owens-Corning's price to BMA was illegal.

After carefully reviewing the record, the court concludes that no genuine issue of material fact exists as to the adequacy of CertainTeed's meeting competition defense. *See Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* ── U.S. ──,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (U.S. 1986) (in antitrust case, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' "). Accordingly, CertainTeed's motion for summary judgment on Count II is granted.

## CONCLUSION

The motion of defendants Owens-Corning and CertainTeed for summary judgment on the basis of standing is denied. The motion of plaintiff Reserve for partial summary judgment against CertainTeed on the issue of liability on Count II is denied. The motion of CertainTeed for summary judgment on Count II is granted.

IT IS SO ORDERED.